IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

SUSAN KELLEY, )
)
Plaintiff, )
)
v. ) Case No. CIV-08-281-KEW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

## OPINION AND ORDER

Plaintiff Susan Kelley (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was born on August 5, 1955 and was 52 years old at the time of the ALJ's decision. She completed her education through the tenth grade. Claimant has engaged in past relevant work as a housekeeper. Claimant alleges an inability to work beginning July 10, 2005 due to depression, poly substance abuse,

3

and chronic liver disease.

## Procedural History

On August 29, 2005, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, et seq.) and supplemental security income under Title XVI of the Social Security Act (42 U.S.C. § 1381, et seq.). Claimant's applications for benefits were denied initially and upon reconsideration. On January 29, 2008, Claimant appeared at a hearing before ALJ Richard J. Kallsnick in Tulsa, Oklahoma. By decision dated February 6, 2008, the ALJ found Claimant was not disabled at any time through the date of the decision. On May 28, 2008, the Appeals Council denied Claimant's request for review. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found Claimant retained the residual functional capacity ("RFC") to perform her past relevant work as a housekeeper.

## Errors Alleged for Review

Claimant asserts the ALJ committed error requiring reversal in (1) failing to properly consider Claimant's mental impairment and,

in so doing, failed to consider the opinion of her treating physician; and (2) failing to engage in a proper credibility determination.

## Claimant's Mental Impairment

Claimant has been diagnosed with Major Depressive Disorder, Severe with Psychotic Features. The ALJ found that this represents a severe impairment. (Tr. 13). Claimant was treated by Dr. Robert V. Hensley on September 22, 2005 complaining of depression and anxiety, a lot of shaking, worries, sadness, crying spells, feelings of helplessness and hopelessness, and an inability to sleep. (Tr. 148). She was diagnosed at Axis I: Major depression, recurrent, severe with anxiety. Methamphetamine dependence, early remission; Axis II: No diagnosis; Axis III: Hepatitis C; Axis IV: Financial, housing, occupational; Axis V: GAF 45. Id. Similar diagnoses were reached in treatment at the Bill Willis Community Mental Health Center on throughout 2006 and 2007. (Tr. 379-401). In particular, Claimant reported auditory and sometimes visual hallucinations. (Tr. 385). Claimant reported speaking to her dead mother. (Tr. 382).

In his decision, the ALJ evaluated Claimant's mental condition under the "paragraph B" criteria. He concluded Claimant had moderate restrictions in activities of daily living, social

functioning, and in concentration, persistence, or pace and no episodes of decompensation. (Tr. 14). The ALJ recognizes Claimant's treatment at the Bill Willis Mental Health Center but never specifically discusses the medical findings contained in the records from that institution. Moreover, the ALJ does not discuss in any portion of his decision the medical diagnosis of Claimant's treating physician, Dr. Hensley. No foundation in the medical record is cited by the ALJ in his conclusion that Claimant's limitations are only "moderate" as opposed to "marked."

Certainly, it is well-recognized in this Circuit that an ALJ is not required to discuss every piece of evidence. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, he is required to discuss uncontroverted evidence not relied upon and significantly probative evidence that is rejected. Id. at 1010. An ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). The ALJ's failure to discuss the basis of his findings of moderate limitations and the evidence that supported a contrary finding with regard to the severity of Claimant's mental limitations represents error that must be corrected with a more in depth discussion of the totality of the

evidence.

Additionally, the ALJ's failure to discuss Dr. Hensley's report is tantamount to ignoring a treating physician's opinion. Beyond discussing Dr. Hensley's opinion, the ALJ is required to give it controlling weight, unless circumstances justify giving it a lesser weight. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the

7

treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted). On remand, the ALJ shall consider Dr. Hensley's diagnosis and opinion and discuss the weight he gave it.

### Credibility Evaluation

Although Claimant characterizes her next challenge as one to the ALJ's determination as to her credibility, in actuality, Claimant agrees with the ALJ's contention that she was not entirely

credible in relating her history and current status in using illicit drugs. Rather, Claimant contends her denying poly substance abuse is merely another sign of her mental impairments. This Court finds this argument to be another in favor of finding debilitating mental impairments – an issue already addressed in this Opinion and Order and for which the case is to be remanded for further findings.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

DATED this 28th day of September, 2009.

*[signature]*
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE